IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 24, 2006

## STATE OF TENNESSEE v. MITCHELL LEE BLANKENSHIP

**Appeal from the Circuit Court for Sevier County**
**No. 10723     Rex Henry Ogle, Judge**

---

**No. E2005-02753-CCA-R3-CD - Filed December 21, 2006**

---

The defendant, Mitchell Lee Blankenship, was convicted of aggravated assault with a deadly weapon, a Class C felony, and sentenced as a Range I, standard offender to five years, with one year to serve in confinement. On appeal, he argues that the evidence is not sufficient to support his convictions and that the trial court erred in sentencing by improperly weighing enhancement factors, not applying mitigating factors, and not granting him full probation. We conclude that the evidence is sufficient. Although the trial court erred in applying the multiple victims enhancement factor, we conclude that the sentence imposed by the trial court was justified. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JOHN EVERETT WILLIAMS, JJ., joined.

Edward Cantrell Miller, District Public Defender, and Amber Deaton Haas, Assistant Public Defender, for the appellant, Mitchell Lee Blankenship.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Al C. Schmutzer, Jr., District Attorney General; and Jeremy D. Ball, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant was charged with assaulting his ex-girlfriend, Kathy Calvera,[1] the mother of his children, while he and she were driving separate cars. At the trial, the victim testified that she and the defendant had lived together from 1998 to 2004. They had three children together, and she had another child from a previous relationship. On March 8, 2005, the victim and the defendant attended a hearing in child support court, where the defendant was ordered to pay over $500 a month

---

[1]By the time of the sentencing hearing, Ms. Calvera had married and changed her last name to Owens.

in child support. After the hearing, the victim drove to her mother's house and picked up her children. She picked up her then-fiancé, Donald Owens. The victim, her four children, and Mr. Owens were in the car, stopped at a traffic light on Highway 66 in Sevier County, when the victim noticed that the defendant was in his car directly behind hers. She said she immediately locked the doors and closed the windows. She said the defendant left his car, approached her, and beat on her window. She said that when the traffic light turned green, she sped away from the defendant and switched lanes. She said the defendant returned to his car and followed her. She said that she switched lanes again and that the defendant again followed her. She said she switched lanes a third time, getting into the right lane. She said the defendant maneuvered his car toward hers, forcing her to drive onto the grass adjacent to the highway. She said the defendant hit her car three to four times while they were driving.

The victim testified that the defendant pursued her for ten to fifteen minutes, during which time he appeared to be cursing and yelling, although she could not hear what he was saying. She said she increased her speed to get away from the defendant while also calming her children in the car. She said she felt scared, both for her children and herself. She said that she tried calling the police immediately but that she was too shaken to communicate over the telephone. She said she gave the cellular telephone to Mr. Owens, who reported the defendant's actions. She continued driving, hoping that a police officer would soon arrive. She said that when an officer did arrive, the defendant pulled his car ahead of hers and established some distance between their cars. The police stopped the defendant, ordered him onto the ground, and handcuffed him. She said that when she arrived at the spot where the defendant was stopped, the defendant began cursing in her direction. She said her car received a couple of scratches due to the defendant's hitting it. In particular, the driver's side mirror was scratched. She said this was the result of the defendant's car hitting the mirror and the mirror scraping the side of the defendant's car while they were driving. She said she did not see whether there was damage to the defendant's car. She acknowledged that based on photographs of the two cars, the damage to the defendant's car was greater than the damage to her car.

On cross-examination, the victim testified that while in child support court on March 8, she told the defendant that he could visit their children at her mother's house that day. She said she did not know that he planned to go straight to her mother's house. She said she told the defendant to call her mother's house to make arrangements to see the children. She said she took the children with her to buy Tylenol because she did not want to leave them with her ill father the entire day. She acknowledged that the defendant did not live in Sevier County but that he lived in Goodlettsville.

Sevierville Police Officer Steven Ford testified that he received a dispatch call on March 8, 2005, regarding a gray car that was chasing a green car. He said he was informed that it was a "domestic situation" and that there had been contact between the vehicles. He intercepted the gray car, which was driven by the defendant. He stopped the defendant, ordered the defendant to exit the car and drop to his knees, and handcuffed the defendant. He said the defendant was very upset and "talking quite a bit." He said that when the victim drove toward them, the defendant became very angry and cursed. He said he and another officer had to restrain the defendant and that even after

he placed the defendant in the patrol car, the defendant continued yelling and cursing. He said the defendant told him he was trying to get the victim to stop in order to talk to her. Officer Ford said he stopped the defendant six or seven miles from the Kroger on Highway 66, where the victim was headed when she spotted the defendant.

Officer Ford took photographs of the damages to the defendant's and the victim's cars, which he described. He said a long scratch on the passenger's side of the defendant's car matched damage to the driver's side mirror of the victim's car. He said there were other minor scratches on the victim's car on which he found paint matching the defendant's car. He admitted that he did not actually see any contact between the two cars and that the damage to the cars only indicated that contact occurred, not who instigated the contact. He said that he arrived at the scene around 4:00 p.m. and that traffic was fairly heavy at that time.

The victim's current husband, Donald Owens, testified that he had been in a relationship with the victim on March 8, 2005. He said he was in the car with her and her children, stopped at a traffic light, when she noticed the defendant behind them and locked the doors. He said the defendant walked to the car and began beating on the victim's window, demanding that she open the door. He said he called 9-1-1 to report that the defendant, against whom he and the victim had a restraining order, was behind them. He said that the victim turned on her emergency lights and attempted to dodge the defendant by switching lanes. He said the defendant eventually pulled adjacent them and pushed them into the grassy area beside the road. He said the defendant initiated contact between the cars even though the victim attempted to avoid the defendant's car. He estimated that the defendant made contact with the car three times. He said the defendant pursued them through two or three traffic lights. He said that during this time, he was very upset and scared for the victim, whom he described as being hysterical. He said the children were also upset.

On cross-examination, Mr. Owens testified that he was not in court with the victim the morning of March 8. He acknowledged that he was in the process of adopting the defendant's children and that the children referred to him as "dad."

Cody Blankenship, the victim's nine-year old son, testified that he was in the car with his three siblings, mother, and Mr. Owens, when they "got ran off the road" in March 2005. He identified the defendant as the person who ran them off the road. He said that he felt sad when it happened but that he did not get hurt. He said that his mother was crying at the time but that Mr. Owens was not upset.

The defendant testified that at the time of the incident, he lived in Goodlettsville and that he had driven to Sevier County to attend a child support hearing. He said he also hoped to see his children and that while in court, he and the victim signed a Parenting Plan, and the victim said he could see the children at her mother's house after the hearing. He said he told her that he needed to speak with his lawyer after the hearing and that he would go see the children afterwards. He said he had not seen his children in several months. On the way to her mother's house, the defendant saw the victim driving away with the children. He said he went into her mother's house and called the

victim. He said she told him that she was going to get cough medicine for one of the children and that she did not know when she would return. He said he went to the store but did not find her and returned to her mother's house. He said he left her mother's house and saw the victim in front of him on Highway 66. He said this was about forty-five minutes to one hour after they had left court. He said that he approached her car and asked to see the children but that Mr. Owens responded that the children were his and that the defendant had "no rights to them."

The defendant testified that when the traffic light turned green and the victim changed lanes, he thought she was going to pull over so he could visit with the children. He said that he eventually realized that she did not intend on letting him see the children and that he changed lanes to pass her. He said that at some point while passing her car, her mirror must have hit his car, but he was not aware of it at the time. He said he continued driving to begin the long drive home. He said he was about a mile in front of the victim when the police stopped him. He said that he had no intention of hurting the victim or anyone in the car and that he was not aware that their cars made contact. He said he would not do anything to hurt his children.

On cross-examination, the defendant denied beating on the victim's window. He said he merely knocked on the window. He said she was not driving fast because there was traffic in front of her. He said that after the police officer ordered him out of the car, threw him on the ground, and handcuffed him, he asked what he had done. He said he did not see the damage to his car until after he was released from jail. He said his car was only parallel to the victim's car for a few seconds. He denied that the cars made contact more than once.

The jury found the defendant guilty of aggravated assault with a deadly weapon. After a sentencing hearing, the court sentenced the defendant to five years, with one year to serve in confinement and the remainder on supervised probation.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence presented at trial was not sufficient to support his conviction. He argues that the evidence did not prove that he acted with the mental state required for aggravated assault. The state responds that the circumstances surrounding the act provide sufficient proof of the defendant's mental state. We agree with the state.

Our standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence; rather, we presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

-4-

The defendant was convicted of aggravated assault, which our code defines, in relevant part, as follows: "A person commits aggravated assault who . . . [i]ntentionally or knowingly commits an assault as defined in § 39-13-101 and . . . [u]ses or displays a deadly weapon." T.C.A. § 39-13-102(a)(1). Section 39-13-101 defines assault in part, as, "Intentionally or knowingly caus[ing] another to reasonably fear imminent bodily injury." The defendant does not argue that Ms. Calvera feared imminent bodily injury or that a car can be considered a deadly weapon for purposes of aggravated assault. See State v. Tate, 912 S.W.2d 785, 787 (Tenn. Crim. App. 1995). Rather, the defendant argues that the contact that occurred between his car and Ms. Calvera's car was neither intentional nor knowing and that, therefore, the state has not proven the mental state required for aggravated assault.

Our code defines "intentional" as referring "to a person who acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." T.C.A. § 39-11-106(18). Additionally, "knowing" is defined as referring

> to a person who acts knowingly with respect to the conduct or circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

T.C.A. § 39-11-106(a)(20).

Taken in the light most favorable to the state, the evidence showed that the defendant, while stopped at a traffic light, walked to the victim's car, shouted at her, and beat on her window. He followed her in his car as she attempted to evade him through traffic. He then used his car to run her car off the road and bumped his car into her car at least three times in the process. When stopped by a police officer, the defendant was visibly upset and began yelling and cursing at the sight of the victim. He was so unruly that two police officers had to restrain him.

The defendant's testimony at trial contradicted the state's evidence. The defendant testified that he merely hoped the victim would let him see their children and that any contact between the two vehicles was inadvertent. The defendant argues that he "offered a plausible explanation for the contact between himself and Ms. Calvera." Indeed, the defendant had the opportunity to explain his theory to the jury. The jury obviously chose to believe the state's witnesses and not the defendant.

The one element present in almost all criminal offenses that is most often proved by circumstantial evidence is the culpable mental state. See State v. Hall, 490 S.W.2d 495, 496 (Tenn. 1973). Other than an accused stating his or her purpose, intent, or thinking at the relevant times, the trier of fact is left to determine the mental state by drawing inferences from the surrounding

circumstances found by it to exist.  See, e.g., Poag v. State, 567 S.W.2d 775 (Tenn. Crim. App. 1978).  In the present case, if the jurors accredited the testimony of the state's witnesses, they could conclude that the defendant was extremely angry at the victim, pursued her in his car for a relatively long time, and pushed her off the road, knocking his car into hers.  It easily could have inferred from these circumstances that the defendant acted intentionally.  We conclude that a rational juror could have found beyond a reasonable doubt that the defendant acted with the intent to commit aggravated assault.  The evidence is sufficient.

## II. SENTENCING

At the sentencing hearing, the victim testified that the defendant's conduct had lasting effects on her children.  She said she sought counseling for her young daughter, who often awoke at night with nightmares.  She said her four-year-old son often talked about what had happened and mimicked the defendant's behavior when playing with toy cars with other children.  She said that at the time of the assault, she had an order of protection against the defendant.  She said she would like the defendant's sentence to reassure her that she and her children were safe.  She said she wanted the defendant to serve time in jail.  She admitted, though, that the defendant had not made any threats to her since the incident and that he lived about a two-hour drive away from her.

The defendant testified that his motivation for encountering the victim was to see his children.  Although he maintained that he did not act intentionally, the defendant expressed remorse and regret over the incident that occurred.  He said he lived far away from his children and wanted to see them while he was in town.  He stated that, at the time of the sentencing hearing, he had not seen them for over a year.  He said that the incident was not something that was likely to recur and that he had not had problems with the victim since that day.  He told the court that he was not a violent person.  He maintained that he was not aware at the time that his car had hit the victim's car.  He also clarified that the order of protection against him required him to refrain from threatening the victim but did not prohibit him from having contact with her or the children.  He said he had a well-paying job as a surveyor and worked eight to twelve hours a day.

The presentence report reflects that the defendant has three prior criminal convictions stemming from acts committed in 1994–theft up to $500, grand larceny, and burglary other than habitation–and a misdemeanor conviction in 2001 for failure to appear on the 1994 theft charge.  The defendant received probation for all these sentences.  The then-thirty-one-year-old defendant reported a history of heavy alcohol and drug abuse until age twenty-four.  Although he stated that he had not consumed alcohol, cocaine, non-prescribed pills, or acid for several years, he did report regularly using marijuana in 2005.  The defendant completed the ninth grade, and while gainfully employed at the time, his recent work history consisted of four jobs within one year.  The presentence report also shows that the defendant owed $6000 in past due child support.

After considering arguments by counsel regarding enhancement and mitigating factors, the court sentenced the defendant to five years.  It ordered that one year be served in confinement and the remainder on supervised probation.

The defendant contends on appeal that his sentence is excessive because the trial court improperly considered enhancement factors and did not consider relevant mitigating factors. He also contends that the trial court erred in not ordering that his full sentence be served on probation. He argues that the trial court did not properly consider his social history and potential for rehabilitation. The state counters that the trial court properly considered both enhancement and mitigating factors and properly concluded that the defendant should serve part of his sentence in confinement.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2003).[2] As the Sentencing Commission Comments to this section note, the burden is now on the defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if we would prefer a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this regard, for the purpose of meaningful appellate review,

> [T]he trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. T.C.A. § 40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994). For reasons discussed below, we do not confer the presumption of correctness upon the trial court's determinations in the present case.

In conducting our de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210 (2003); see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986).

---

[2]We note that on June 7, 2005, the General Assembly amended Tennessee Code Annotated sections 40-35-102(6), -114, -210, -401. See 2005 Tenn. Pub. Acts ch. 353, §§ 1, 5, 6, 8. However, the amended code sections are inapplicable to the defendant's appeal.

## A. Length of Sentence

The defendant contends that his sentence of five years within the applicable three-to-six-year sentencing range is excessive in light of the applicable enhancement and mitigating factors. See T.C.A. § 40-35-112(a)(3). Unless enhancement factors are present, the presumptive sentence to be imposed is the minimum in the range for a Class C felony. T.C.A. § 40-35-210(c) (2003). Our sentencing act provides that, procedurally, the trial court is to increase the sentence within the range based on the existence of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors. Id. at (d), (e). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. Id. § 40-35-210 (2003), Sentencing Commission Comments; Moss, 727 S.W.2d at 237; see Ashby, 823 S.W.2d at 169.

In reaching its sentencing decision, the trial court applied the following enhancement factors, as provided in Tennessee Code Annotated section 40-35-114 (2003): (2) that the defendant had a previous history of criminal convictions; (4) that the offense involved more than one victim; and (11) that the defendant had no hesitation about committing a crime when the risk to human life was high. It found no mitigating factors.

Initially, although the defendant does not raise the argument, we must conclude that the trial court erred in applying the multiple victims enhancement factor. Our supreme court has held that "there cannot be multiple victims for any offense of aggravated assault committed against a specific, named victim." State v. Imfield, 70 S.W.3d 698, 706 (Tenn. 2002). In Imfield, the court rejected the argument that the multiple victims factor could be applied "on the basis that there were individuals in the accident on behalf of whom no charges were filed." Id. In the present case, the defendant was charged with and convicted of aggravated assault against Kathy Calvera. Although five other people, including four children, were in the car with her, they are not considered "victims" for purposes of sentence enhancement under enhancement factor (4).

Regarding the other enhancement factors, the defendant argues that "they do not rise to the level and seriousness to enhance the sentence to one year shy of the maximum and two years above the minimum sentence envisioned by the statute." He argues that the trial court erred in placing weight on his criminal history. The record reflects that the defendant has a criminal history that includes two prior felonies. The trial court considered the defendant's criminal history but did not specify how much weight it placed on this factor. In its sentencing ruling, the court placed more emphasis on enhancement factor (11), that the defendant did not hesitate when the risk to human life was high. We agree with the trial court that the sentence should be enhanced based on this factor. As the trial court noted, the assault took place at a time when considerable traffic was present, and the defendant's actions could have endangered other motorists and his own children. The jury found that the defendant intentionally, or at least knowingly, used his car as a weapon on a public highway. This indicates that the defendant did not hesitate to act when the risk to human life was high.

In regard to mitigating factors, the defendant argued at the sentencing hearing that three factors were relevant: (2) that the defendant acted under strong provocation; (3) that substantial grounds existed tending to excuse or justify the defendant's criminal conduct; and (11) that the defendant committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct. In rejecting these mitigating factors, the court said:

> He wasn't provoked by anybody, you know. He might contend that – that her failure to let him see the children . . . .
>
> Certainly, that does not provide provocation, in the Court's opinion. And it certainly doesn't in this case. And I do not find any substantial grounds to excuse or justify his conduct. That's what courts are for.
>
> And . . . as to #11 . . . . Quite the contrary. He drove down the road, he followed this lady for a period of miles out on Highway 66. That he made contact with her car, which, to be honest with you, indicates an intentional – in fact, they did have to find "intentional" or "knowingly" in order to convict him to start with.

We agree with the trial court that these mitigating factors do not apply, and we do not find any other factors in the record, including the defendant's social history, that weigh in favor of mitigation. Although we conclude that the trial court erroneously applied enhancement factor (4), this error does not necessitate a sentence modification. See State v. Hayes, 899 S.W.2d 175, 186 (Tenn. Crim. App. 1995) ("The mere number of existing enhancement factors is not relevant–the important consideration being the weight to be given each factor in light of its relevance to the defendant's personal circumstances and background and the circumstances surrounding his criminal conduct."). We conclude that a proper balancing of the enhancement and mitigating factors supports the five-year sentence imposed by the trial court.

## B. Confinement

The defendant contends that the trial court should have granted him full probation. When determining if confinement is appropriate, a trial court should consider whether (1) confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct; (2) confinement is necessary to avoid depreciating the seriousness of the offense, or confinement is particularly suited to provide an effective deterrence to people likely to commit similar offenses; or (3) measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant. T.C.A. § 40-35-103(1)(A)-(C). The trial court should also consider a defendant's potential or lack of potential for rehabilitation and the mitigating and enhancement factors set forth in Tennessee Code Annotated sections 40-35-113 and -114. T.C.A. §§ 40-35-103(5), -210(b)(5) (2003); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). The

sentence imposed should be the least severe measure necessary to achieve its purpose. T.C.A. § 40-35-103(4).

As a standard offender of a Class C felony, the defendant is presumed a favorable candidate for alternative sentencing. T.C.A. § 40-35-102. However, the burden is on the defendant to establish that he is suitable for total probation and "that probation will be in the best interest of the defendant and the public." State v. Ring, 56 S.W.3d 577, 586 (Tenn. Crim. App. 2001) (citing State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997)).

The defendant avers that the trial court did not properly consider his potential for rehabilitation in sentencing him to confinement. He argues that his prior criminal history, including his record of probation compliance, points to his potential for rehabilitation. In addition, he complains that the trial court did not discuss his social history, "i.e., his work history and other good citizenship qualities." However, we do not find in the record evidence of the defendant's potential for rehabilitation sufficient to establish his suitability for total probation. Although the defendant's criminal history does not include prior assault convictions, it does include prior felonies. Moreover, evidence from the sentencing hearing and the presentence report reflect that the defendant had an unstable work history, had been delinquent in paying child support, was an admitted drug user, and had an order of protection against him at the time of the current offense. We do not agree with the defendant that his social history warrants a grant of total probation.

In sentencing the defendant to a year of confinement, the trial court considered that the defendant had been given probation for his prior convictions. The trial court also found that a sentence of full probation would depreciate the seriousness of the offense and that the offense "does, in fact, cry out for some jail time." Angry at the victim, the defendant chose to use his vehicle as a weapon to get her attention. Although apparently angry about not seeing his children, the defendant vented his anger in a way that endangered the lives of his children, who were passengers in the victim's car. The defendant engaged in conduct that endangered the lives of two adults, four children, and countless other motorists on the highway. The defendant's behavior had damaging effects on his children. The trial court properly considered the seriousness of the circumstances surrounding the offense in denying full probation. The defendant has not satisfied his burden of proving that he is entitled to full probation. The trial court did not err in ordering that the defendant serve one year in confinement.

## CONCLUSION

Based on the forgoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE

-10-